# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIE MEZA, | 1:11-cv-01483-AWI-DLB (HC) |
|     Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|     v. | |
| MATTHEW CATE, | [Doc. 1] |
|     Respondent. | |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Following a jury trial in the Fresno County Superior Court, Petitioner was convicted of corporal injury to a spouse or cohabitant (Ca. Pen. Code[1] § 273.5, subd. (a); count 1). Petitioner was acquitted of forcible sodomy (§ 286, subd. (c)(2); count 2) and criminal threats (§ 422; count 3). Petitioner admitted he had two prior convictions under the three strikes law.

Petitioner was sentenced to a total prison term of 25 years to life.

Petitioner filed a timely notice of appeal. On April 2, 2009, the California Court of Appeal, Fifth Appellate District affirmed the judgment.

On May 8, 2009, Petitioner filed a petition for review. The petition was denied on June 10, 2009.

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

1

On March 24, 2010, Petitioner filed a post-conviction collateral petition in the Fresno County Superior Court. The petition was denied in a reasoned decision on June 2, 2010.

On June 17, 2010, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District. The petition was summarily denied on September 9, 2010.

Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court on November 12, 2010. The petition was summarily denied on June 8, 2011.

Petitioner filed the instant federal petition for writ of habeas corpus on September 6, 2011. Respondent filed an answer to the petition on January 24, 2012, and Petitioner filed a traverse on March 21, 2012.

## STATEMENT OF FACTS

Although the parties extensively detail the facts describing the relationship between [Petitioner] and the victim leading up to the night in issue, it is adequate for our purposes to provide a general summary.

The victim, Vanessa V., testified that she met [Petitioner] in high school when she was 15 years old. They started living together when Vanessa was 16 years old. At first they lived with [Petitioner's] parents and later they lived with Vanessa's father. Vanessa and [Petitioner's] relationship lasted approximately eight years.

On February 8, 2007, Vanessa tried to sleep while [Petitioner] stayed up in their room drawing and getting out his comic books. Throughout the night, [Petitioner] would often try to wake Vanessa up and get her attention by kicking her and yelling names such as "[w]hore and "slut."

Around 4:30 a.m., Vanessa woke up and [Petitioner] asked her to go for a drive with him. They left the house and drove to a local pool park. After they parked the car, [petitioner] began to tell Vanessa how he was tired of her, he hated her, she had ruined his life, and his parents hated him because of her. [Petitioner] then told Vanessa to pull her pants down and get in the backseat. Vanessa said no because she was on her period. When [Petitioner] replied that he did not care, Vanessa followed his instructions and got in the backseat.

[Petitioner] followed Vanessa into the backseat and began having anal sex with her. Vanessa testified that she started crying and told [Petitioner] to stop because it hurt. According to Vanessa, [Petitioner] refused her repeated requests to stop and forced her to continue having anal sex with him. He also hit her numerous times, often when she would try to get away from him. Vanessa described how [Petitioner] hit her on the "right side of [her] back torso" with his fist, stomped down on her leg with his foot, and choked her for several seconds with his left hand. [Petitioner] also scratched and hit her in other areas of her body, including her arms, head, and forehead. Vanessa further testified that while they were at the pool park, [Petitioner] threatened to kill her or her father if she

told anyone what happened.  Vanessa believed [Petitioner] because she had observed [Petitioner] push his mother in the past.

Vanessa sustained numerous bruises as a result of the incident at the pool park.  The bruises were documented and photographed by a nurse that performed a sexual assault examination on Vanessa later that afternoon.  Although [Petitioner] had hit her in the past, Vanessa confirmed that she received these bruises during the February 8 incident, and that she did not "receive any of these injuries from prior sexual relationships or sexual acts" with [Petitioner].

*Prior Domestic Violence Evidence*

On one occasion around August 2006, [Petitioner] came up to Vanessa while she was getting ready for work and started hitting her in the stomach.  On another occasion, they were arguing and [Petitioner] picked up a Samurai sword and started coming at Vanessa with it.

In October 2006, Vanessa and [Petitioner] were arguing in the hallway when [Petitioner] pushed her up against the wall and started choking her.  Vanessa's cousin, Marcos Sandoval, was present during the incident and testified that he heard [Petitioner] call Vanessa names like "bitch" and "slut" and that [Petitioner] pushed Vanessa with such force that her head hit the wall.  After Marcos intervened, Vanessa and [Petitioner] went into a bedroom to talk.  When Marco went in to check on them, he found [Petitioner] lying on top of Vanessa, holding her arms down, and yelling at her.  Marcos separated them.  A little while later, he found [Petitioner] doing the same thing to Vanessa and separated them again.

In November 2006, [Petitioner] struck Vanessa's legs with a long, plastic rod, causing five or six bruises.

In January 2007, [Petitioner] and Vanessa were arguing.  Vanessa touched [Petitioner's] shoulder and he spun around and hit her between the eyes with his fist, causing her to develop a black eye.

Cristela P. dated [Petitioner] briefly in high school when she was 15 years old and had a son by him.  Cristela testified that on one occasion when they were dating, [Petitioner] hit her in the legs with his fist, causing her to fall, and then slapped her in the ear.  Cristela denied that there had ever been any problems between her and Vanessa, and confirmed they had become friends since the events in this case.

The Defense

The defense presented testimony impugning Vanessa's character and credibility. [Petitioner's] mother, Rosie Meza, testified that [Petitioner] and Vanessa got along well until Cristela moved back to town and Vanessa found out [Petitioner] was the father of Cristela's son.  Vanessa became jealous and expressed that she did not want [Petitioner] to have contact with his son.  Vanessa started to call [Petitioner] from work eight to ten times a day, often to start fights with [Petitioner].  Rosie also denied that her son ever pushed her as Vanessa claimed.

[Petitioner's] father, Robert Meza, testified that Vanessa never made the payments on a credit card he agreed to cosign so she could purchase a wedding

3

dress. Her failure to make the payments resulted in the balance doubling and hurt Robert's credit score. When he confronted Vanessa about the unpaid bill, she said she was not going to pay it. Robert asked Vanessa to leave the house, and Vanessa replied, "F you Robert." Later, Vanessa apologized and asked if she could move back in, but Robert did not accept her apology and told her to leave them alone.

[Petitioner's] broker, Robert Meza, Jr., testified that as adults, he never fought with [Petitioner] physically as Vanessa claimed. When he lived with his parents, Robert, Jr. never saw [Petitioner] get violent with Vanessa, hit her, or call her derogatory names. Robert, Jr. further testified that [Petitioner] was teaching Vanessa self-defense and that Vanessa had expressed an interest in learning self-defense after an incident where she encountered Cristela at a Target store and they had exchanged dirty looks.

[Petitioner's] sister-in-law, Elievette Meza, also testified regarding problems between Vanessa and Cristela. One day Vanessa came home from work and said she had run into "the F-ing B" at Target, and said that Cristela had essentially challenged her to fight. On another occasion, after Vanessa had taken Elievette's daughter to a local doughnut store, Vanessa said that Cristela was back in town and that she had thrown rocks at their car. According to Elievette, Vanessa would argue with [Petitioner] over his "income tax" being taken for child support. Although Vanessa expressed that she did not want [Petitioner] to visit his son, she also said he should visit him so that [Petitioner] would not have so much money taken away from him for child support.

Elievette further testified that Vanessa loved to exaggerate. After [Petitioner] was arrested, Vanessa called Elievette and told her that [Petitioner] had caused her to suffer three broken ribs, a ruptured disk, and a concussion, and that she had been in the hospital for two days. In the past, Vanessa had also made statements suggesting that her ill father was close to dying when he was not.

(LD 1 at 2-5.)

## DISCUSSION

I.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule

to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

III.   Instructional Error

Petitioner contends the trial court erred by failing to sua sponte instruct the jury that consent was a defense to spousal abuse. The appellate court denied the claim in the last reasoned decision stating:

> [Petitioner] contends the court erred by failing, sua sponte, to instruct the jury that consent was a defense to spousal abuse. [FN 3] Although [Petitioner] recognizes that spousal abuse is a form of battery and that consent of the victim is generally not a defense to assault or battery, he asserts, "the conduct at issue was more akin to a potentially dangerous sport to which the participants assume the risk, and because the injuries in this case were relatively minor (bruising to the body)...consent should have been available as a defense." We disagree.
>
> FN 3. [Petitioner] proposes the court "could have fashioned an instruction similar to the one it gave advising the jury that consent was available as a defense to the sodomy by force charge." In relevant part, the court instructed the jury pursuant to Judicial Council of California Criminal Jury Instructions (2007), CALCRIM No. 1030 that "The defendant is not guilty of forcible sodomy if (he)

6

> actually and reasonably believed that the other person consented to the act. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the other person consented. If the People have not met this burden, you must find the defendant not guilty."
>
> There is no authority for, and we see no merit in, [Petitioner's] contention that consent is a valid defense to the crime of spousal abuse. However, we need not resolve this issue in any event because a trial court is only required to instruct on a particular defense "'"if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case."' [Citations.]" (*People v. Maury* (2003) 30 Cal.4th 342, 424.)
>
> It is clear from the record that [Petitioner] was not relying on consent as a defense to the charge of spousal abuse and that this theory was inconsistent with [Petitioner's] proffered defense. As [Petitioner] acknowledges, "The defense theory was that Vanessa fabricated all of the charges, perhaps because she was jealous of [Petitioner's] ex-girlfriend, Cristela." To the extent [Petitioner's] trial counsel suggested in closing argument that Vanessa's bruises might have resulted from past "rough sex" the couple had consensually engaged in, this theory was not relied on as a defense to the spousal abuse charge but simply as an alternative explanation for Vanessa's bruises. [FN 4] Counsel did not argue, and no evidence was presented, that Vanessa consented to the beating [Petitioner] inflicted on Vanessa during the pool park incident. Vanessa also denied that she received any of the bruises from prior sexual acts with [Petitioner], and [Petitioner] presented no evidence to the contrary. Thus, even assuming that consent of the victim could constitute a valid defense to spousal abuse, the court was under no obligation to give such instruction absent a specific request by counsel.
>
> FN 4. Specifically, defense counsel argued: "[O]n the spousal abuse charge could these bruises have happened during the rough sex that the victim admitted to her friends that she does, that she's involved in? Maybe that's why she's a little embarrassed about the bruises. Maybe she gets bruises because these guys are into some bizarre, sex, rough sex, pulling of hair. She gets bruised, doesn't want to explain it."

(LD 1 at 6-7.)

Here, the appellate court reasonably found that a consent theory in this case was not available under California law, and was in fact inconsistent with Petitioner's defense at trial and unsupported by substantial evidence. To warrant federal habeas relief on a claim that the trial court erred by omitting an instruction, Petitioner must show that the omission so infected the entire trial that the resulting conviction violated his federal constitutional right to due process. See Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Cupp v. Naughten, 414 U.S. 141, 147 (1973). "Where the alleged error is the failure to give an instruction, the burden on the petitioner is 'especially heavy.'" Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992) (quoting Kibbe,

7

431 U.S. at 155). The Supreme Court has held that, "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Matthews v. United States, 485 U.S. 58, 63 (1988). Petitioner has failed to demonstrate a due process violation by the trial court's alleged error in failing to give a sua sponte jury instruction on consent as a defense to spousal abuse. There was simply no evidence presented that the victim consented to the beating she endured by Petitioner. Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

IV.    Ineffective Assistance of Counsel

Petitioner contends defense counsel was ineffective for failing to request an instruction on consent as a defense to spousal abuse. Petitioner also claims counsel was ineffective for failing to adequately investigate witnesses and theories to support consent as a defense. Petitioner raised these claims to the state court by way of collateral review. The Fresno County Superior Court denied the claim on the merits in the last reasoned decision.

The Superior Court held as follows:

> Petitioner alleges that he received ineffective assistance of counsel from his trial counsel, who failed to request a jury instruction regarding the defense of consent to the charge of corporal injury to a spouse or cohabitant. Petitioner contends that his attorney should have presented evidence to establish that the victim's bruises were caused by "rough sex" that she consensually engaged in with petitioner. Petitioner claims that if his attorney had presented such evidence, the jury would have acquitted him of the spousal abuse charge.
>
> In addition, petitioner alleges that his attorney was ineffective for failing to investigate whether the victim consented to "rough sex." He claims that there was at least one witness who would have testified that the victim told her how the bruises were caused by consensual "rough sex."
>
> However petitioner has failed to allege any facts that demonstrate he is entitled to relief. Petitioner was acquitted of the charges of forcible sodomy and criminal threats, but convicted of the charge of corporal injury to a spouse or cohabitant. (Court of Appeal opinion, p.2.) Consent is not a defense to a charge of assault or battery that results in great bodily injury. (*People v. Alfaro* (1976) 61 Cal.App.3d 414, 429; *People v. Samuels* (1967) 250 Cal.App.2d 501, 513-514.) "[C]onsent of the victim is not generally a defense to assault or battery, except in a situation involving ordinary physical contact or blows incident to sports such as football, boxing or wrestling. . . . It is a matter of common knowledge that a normal person in full possession of his mental faculties does not freely consent to the use, upon himself, or force likely to produce great bodily injury." (*People v.*

8

> *Samuels*, *supra*, at 513-514.) Therefore, defense counsel can hardly have been incompetent for failing to request an instruction that was not supported by the law.
>
> Nor was counsel ineffective for failing to investigate whether there were witnesses who would have testified that the victim consented to the assault and battery. As discussed above, consent is not a defense to battery. (*Samuels*, *supra*, at 513-514.) While consent would have been a defense to the forcible sodomy charge, petitioner was acquitted of this charge, so his attorney was not ineffective for failing to investigate or request an instruction regarding the issue of consent to the battery.

(LD 8 at 1-3.)

The state appellate court's determination was not unreasonable. Pursuant to California law, it is clear that, under the circumstances of this case, consent was not a viable defense to the assault and battery. Although the defense of consent may have been available to the charge of forcible sodomy or criminal threats, Petitioner was acquitted of both of those charges. Thus, Petitioner's claim is unfounded. Petitioner's counsel could not have been ineffective for failing to raise a meritless objection. See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); see also Juan H. v. Allen, 408 F.3d 1262, 1273-74 (9th Cir. 2005) (state court was not objectively unreasonable in holding that performance of counsel did not fall below objective standard of reasonableness on account of not raising meritless objection). Accordingly, there is no basis for habeas corpus relief.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the

Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **April 16, 2012**                             /s/ **Dennis L. Beck**
                                                                            UNITED STATES MAGISTRATE JUDGE